**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA A. BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 05168 |
| | ) | Hon. Marvin E. Aspen |
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

On July 13, 2017, Marie A. Butler filed a complaint alleging Defendant CitiMortgage, Inc. is liable for improperly reporting mortgage debt to consumer reporting agencies in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and under various other statutory and common law theories of liability. Presently before us is Plaintiff's application for leave to proceed *in forma pauperis* ("IFP") and her motion for attorney representation. (Dkt. Nos. 4–5.) For the reasons stated below, we take her IFP application and motion for attorney representation under advisement, and we dismiss her complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

**ANALYSIS**

Under 28 U.S.C. § 1915(a), a federal district court may authorize a plaintiff to proceed *in forma pauperis* if she is unable to pay the mandated court fees. Here, because we dismiss Plaintiff's complaint for failure to state a claim without prejudice, we need not substantively address whether Plaintiff's application establishes she is financially qualified to proceed *in forma pauperis*, and instead take her application under advisement. *See Luevano v. Wal-Mart Stores,*

*Inc.*, 722 F.3d 1014, 1023, n.2 (7th Cir. 2013) ("Finally, note that a district court can avoid the complications we face here by keeping an IFP application under advisement, rather than denying it, while the plaintiff is given a reasonable but finite time to try to cure the problems the court finds with the complaint.").

In addition to considering indigence, we must look beyond Plaintiff's financial status and conduct a threshold review of the complaint. 28 U.S.C. § 1915(e)(2). An action must be dismissed if, among other reasons, it fails to state a claim on which relief may be granted. *Id.* § 1915(e)(2)(B)(ii). Pursuant to § 1915(e)(2)(B)(ii), we analyze the complaint using the same standard applied under Federal Rule of Civil Procedure 12(b)(6). *Coleman v. Labor & Indus. Review Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017) (citing *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *DeWalt v. Carter*, 224 F.3d 607, 611 (7th Cir. 2000)). We turn then to address the allegations in Plaintiff's pro se complaint, which we assume are true and are obligated to liberally construe. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *Luevano*, 722 F.3d at 1018, 1024.

### A. Plaintiff's Factual Allegations

Plaintiff's claims concern allegedly incorrect information Defendant provided to consumer reporting agencies ("CRAs") regarding a debt Plaintiff purportedly owed on a mortgage for a home her husband Anthony Butler purchased before they were married.

(Compl. at PageID #:1.[1]) On November 30, 2006, Butler entered into an "FHA backed" purchase money mortgage for the home, which was located in Homewood, Illinois (the "Homewood property"). (*Id.*) The mortgage was later transferred to Defendant from the original mortgagee on December 30, 2006. (*Id.*)

Thereafter, Plaintiff and Butler married on April 2, 2008. (*Id.*) On January 6, 2010, Plaintiff entered into a separate FHA-backed purchase money mortgage for a property located in Flossmoor, Illinois ("Flossmoor property"). (*Id.*) Shortly before Butler's death on February 25, 2010, he executed a quit claim deed that transferred title to the Homewood property "to Plaintiff and himself jointly." (*Id.*; *see also* Quit Claim Deed, Compl. Ex. 3 at PageID #:23.) Plaintiff recorded the quit claim deed, informed Defendant about it, and continued making contractual payments on the Homewood mortgage. (Compl. at PageID #:1.)

Plaintiff later discovered that Defendant had been incorrectly reporting mortgage debt to credit reporting agencies. (*Id.* at PageID #:2.) Specifically, she alleges Defendant reported that she owned the Homewood property since November 30, 2006 (the date Butler entered into the mortgage), instead of February 25, 2010 (when Butler executed the quit claim deed, transferring the property to Plaintiff). (*Id.*) Plaintiff claims Defendant's actions in erroneously reporting to the credit bureaus two FHA loans in her name "put her at risk for FHA fraud as a First-Time

---

[1] Plaintiff's complaint does not comply with Federal Rule of Civil Procedure 10(b), which requires a party's claims to be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b); *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). As not all of the paragraphs in the complaint are numbered, we refer herein to page numbers. Insofar as Plaintiff intends to file an amended complaint consistent with this Order, the pleading must comply with both Rule 8, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as the requirements of Rule 10(b). *See Stanard*, 658 F.3d at 797 (explaining the "primary purpose of these rules is to give defendants fair notice of the claims against them and the grounds supporting the claims").

Homebuyer." (*Id.*) Plaintiff also alleges that the "inaccurate and misleading" information Defendant furnished to CRAs resulted in her being denied multiple loan modification requests, eventually led to the foreclosure and judicial sale of her Flossmoor property, and caused her to file for bankruptcy. (*Id.* at PageID #:2–3.)

Plaintiff asserts that "upon learning of the false information through . . . Equifax and TransUnion credit reports, Plaintiff reported the inaccurate information to Defendant and demanded that Defendant conduct an investigation and ultimately remove the derogatory information from Plaintiff's credit report." (*Id.* at PageID #:3.) Specifically, she requested that Defendant "delete the derogatory information from Plaintiff's credit report, reflect all discharged debt as 'current' with account balances of '$0,' remove all 'post-bankruptcy activity' reported on each account, or, in the alternative, 'include a 100-word statement in [Plaintiff's] credit report' detailing Plaintiff's dispute." (*Id.*) Plaintiff contends Defendant continued to report the information despite receiving notice of Plaintiff's dispute, failed to conduct a reasonable investigation, failed to review all relevant information provided by Plaintiff, failed to correct and update Plaintiff's credit report, and failed to take other "appropriate measures" upon notice of the disputed debt. (*Id.*) Based on Defendant's conduct, Plaintiff now asserts claims for (1) violations of the FCRA (Count I); (2) invasion of privacy (Count II); (3) negligent, wanton, and/or intentional hiring and supervision of incompetent employees or agents (Count III); and (4) negligent, wanton, and intentional conduct (Count IV).

**B.     FCRA Claim**

First, Plaintiff alleges Defendant willfully violated the FCRA by reporting false information to CRAs, failing to maintain or follow reasonable procedures to assure "maximum possible accuracy of Plaintiff's credit report," and failing to conduct a "proper and lawful reinvestigation." (Compl. at PageID #:7.) "In addition to imposing obligations on consumer

4

reporting agencies, the FCRA contains requirements for entities . . . that furnish information to those agencies." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 433 (7th Cir. 2009). In particular, 15 U.S.C. § 1681s–2 regulates persons and entities that furnish information to CRAs. *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). Under § 1681s–2(a), furnishers may not knowingly provide inaccurate information to a CRA, and they have a duty to conduct a reasonable investigation after receiving notice of a dispute "directly from the consumer." *Rollins v. Peoples Gas Light & Coke Co.*, 379 F. Supp. 2d 964, 966–67 (N.D. Ill. 2005). Pursuant to § 1681s–2(b), furnishers also have a duty to take certain actions after receiving notification from a CRA that an individual consumer disputes information. *Id.* When a CRA notifies a furnisher of a dispute, the furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the CRA; (3) report the results of the investigation to the CRA; and (4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information. *Westra*, 409 F.3d at 827.

However, the FCRA provides a private right of action in limited circumstances. Only a government entity may enforce a furnisher's breach of duty under § 1681s–2(a). *See* 15 U.S.C. § 1681s–2(c)–(d); *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011); *see also Lang v. TCF Nat. Bank*, 338 F. App'x 541, 544 (7th Cir. 2009) ("Section 1681s–2(c) specifically exempts violations of § 1681s–2(a) from private civil liability; only the Federal Trade Commission can initiate a suit under that section."); *Rollins*, 379 F. Supp. 2d at 967 ("It is undisputed that there is no private right of action under § 1681(a)."); *Love v. Vill. of Addison*, No. 16 C 6584, 2017 WL 1036507, at *2 (N.D. Ill. Mar. 17, 2017) ("[E]nforcement of section 1681s–2(a)(2) is the exclusive realm of state and federal agencies."). Nevertheless, a consumer

may bring an action to enforce the breach of a furnisher's duty under § 1681s–2(b).
*See* 15 U.S.C. §§ 1681n, 1681o. "The duties § 1681s–2(b) imposes on furnishers of information arise only after the furnisher is notified pursuant to § 1681i(a)(2) by a consumer credit reporting agency that a consumer challenges information." *Rollins*, 379 F. Supp. 2d at 967; *see also* § 1681i(a)(2) (providing that within five days after receiving notice of a dispute from a consumer, a CRA must "provide notification of the dispute to any person who provided any item of information in dispute," and the "notice shall include all relevant information regarding the dispute that the agency has received from the consumer").

Here, Plaintiff contends Defendant is a furnisher of information under the FCRA.[2] (Compl. at PageID #:7.) However, Plaintiff cannot bring a private right of action because her claims arise under § 1681s–2(a) and not § 1681s–2(b). *Purcell*, 659 F.3d at 623; *Rollins*, 379 F. Supp. 2d at 966–67. Plaintiff's complaint contains no allegation that Plaintiff provided notice of the disputed information to a CRA, or that Defendant received the required notice of a dispute from a CRA. Rather, Plaintiff alleges that *she* notified Defendant "directly of a dispute on the Defendant CITI account's completeness and/or accuracy, as reported." (Compl. at PageID #:7.) Plaintiff has failed to state a claim upon which relief can be granted as Defendant's duties under § 1681s–2(b) are not triggered unless a CRA notified it that Plaintiff disputed the information it provided. *See, e.g.*, *Gulley v. Pierce & Assocs., P.C.*,

---

[2] Plaintiff also asserts in a single sentence that Defendant "failed to maintain and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report concerning the accounts in question, violating 15 U.S.C. § 1681e(b)." (Compl. at PageID#: 7.) However, § 1681e(b) applies only to CRAs. *Id.* (stating CRAs "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (explaining that to state a claim under § 1681e(b), plaintiff must sufficiently allege that a CRA's report contained inaccurate information). Plaintiff has provided no allegations that would support a claim against a CRA under § 1681e(b).

6

436 F. App'x 662, 665 (7th Cir. 2011) ("[A]bsent a formal notice from a credit reporting agency, U.S. Bank's duty to investigate was never triggered."); *Ori v. Fifth Third Bank*, 603 F. Supp. 2d 1171, 1174 (E.D. Wis. 2009) ("Plaintiff alleges nothing that plausibly suggests either that he provided notice to a CRA that he disputed the accuracy of information that [the defendant bank] possessed or disseminated or that a CRA provided notice to [the bank] of such a dispute."); *Kissiova v. Bayview Loan Serv., LLC*, No. 15 C 9812, 2017 WL 914779, at *3 (N.D. Ill. Mar. 8, 2017) (dismissing claims where there was no allegation that the furnisher received the required notice under § 1681i(a)(2), and therefore, she had no private right of action under § 1681s–2(b)); *Lockett v. Advocate Illinois Masonic Hosp.*, No. 10 C 7333, 2010 WL 5135909, at *1 (N.D. Ill. Dec. 10, 2010) ("A . . . furnisher of information . . . only has a duty to investigate if it receives notice of a dispute from a consumer reporting agency. This means that the first step in resolving a dispute with a furnisher is to contact the credit reporting agency . . ., advise the credit reporting agency that information is disputed, and fill out a consumer dispute verification form to be sent to the provider."). To the extent Defendant's actions violated its duties under § 1681s–2(a) after Plaintiff directly provided notice of her dispute, "enforcement [is] in the hands of state and federal agencies." *Purcell*, 659 F.3d at 623. Accordingly, Plaintiff has not stated a claim under the FCRA and Count I is dismissed, without prejudice. Plaintiff may amend her complaint, consistent with this opinion, on or before September 22, 2017. *Childress v. Walker*, 787 F.3d 433, 441–42 (7th Cir. 2015); *Luevano*, 722 F.3d at 1022.

  **C.**  **Invasion of Privacy and Negligence Claims**

  In Count II, Plaintiff alleges Defendant violated Plaintiff's "right to be free from invasions of privacy," asserting Defendant's willful "false credit reporting" and other conduct "resulted in multiple intrusions and invasions of privacy." (Compl. at PageID #:8.) She cites violations of Illinois law, and of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)

7

("FDCPA") and Gramm-Leach-Bliley Act, 15 U.S.C. § 6801(a) ("GLBA"). (*Id.*) Plaintiff also asserts common law claims for negligent hiring and negligence in Counts III and IV of her complaint, respectively. (Compl. at PageID #:9–10.) Plaintiff alleges in general terms that Defendant breached a duty to her through its conduct in reporting her debt, and in hiring, training, retaining, or supervising "incompetent credit reporting individuals and/or entities." (*Id.*)

Insofar as Plaintiff has asserted common law claims for invasion of privacy, negligence, and negligent hiring or supervision, the FCRA preempts such state-law actions arising out of a furnisher's alleged reports to credit agencies. *Purcell*, 659 F.3d at 625 ("Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims."); 15 U.S.C. § 1681t(b)(1)(F) ("No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."). Preemption extends both to statutory and common law claims. *Purcell*, 659 F.3d at 625; *Todd v. Franklin Collection Serv., Inc.*, 694 F.3d 849, 850 (7th Cir. 2012) (per curium) ("FCRA explicitly preempts state-law claims alleging violations of the federal act."). The factual basis for all of Plaintiff's claims stems from her allegations that Defendant provided inaccurate information to CRAs either through its own negligent conduct or by negligently hiring, training, retaining, or supervising its employees, and she was injured as a result. Plaintiff's invasion of privacy and negligence claims are thus entirely based on the same conduct underlying her FCRA claim, and the claims are preempted.

Nor can Plaintiff sustain a cause of action under the GBLA or FDCPA. As Plaintiff appears to acknowledge in her complaint, the GBLA "does not provide for private enforcement

8

or even hint at any private right of action." *Am. Family Mut. Ins. Co. v. Roth*, No. 05 C 3839, 2005 WL 3700232, at *6–9 (N.D. Ill. Aug. 5, 2005), *report and recommendation adopted,* No. 05 C 3839, 2006 WL 2192004 (N.D. Ill. July 27, 2006); *accord. Johnson v. Melton Truck Lines, Inc.*, No. 14 C 07858, 2016 WL 8711494, at *9, n.20 (N.D. Ill. Sept. 30, 2016) ("The GLBA, moreover, does not provide for a private right of action, so [plaintiff] would not be able to bring a claim under that Act even if he had pled sufficient facts to state a claim."); *Cox v. Sherman Capital LLC*, No. 12 C 01654, 2015 WL 3513889, at *5 (S.D. Ind. June 3, 2015) ("[T]he duties under the GLBA are enforced by federal regulators, state insurance authorities, and the Federal Trade Commission, and courts have consistently held that there is no private right of action created by Congress under the GLBA." (internal quotations omitted)). Further, Plaintiff's lone, conclusory reference to the FDCPA is insufficient to state a claim for relief. (*See* Compl. at PageID#:8 (citing 15 U.S.C. § 1692(a), which sets forth the statutory purpose for regulating "abusive practices" of debt collectors).) At a minimum, Plaintiff failed to establish as a threshold matter that Defendant even qualifies as a "debt collector" under the FDCPA. *See* 15 U.S.C. § 1692a(6). Accordingly, Plaintiff's claims for invasion of privacy (Count II), negligent hiring and supervision (Count III), and negligence (Count IV) fail to state a claim upon which relief may be granted and must be dismissed. The dismissal is without prejudice at this stage, and to the extent Plaintiff believes she can allege a claim that is not preempted by the FCRA, she may amend her complaint on or before September 22, 2017. *Childress*, 787 F.3d at 441–42; *Luevano*, 722 F.3d at 1022.

## CONCLUSION

As discussed above, we dismiss Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), without prejudice. Plaintiff may file an amended complaint on or

9

before September 22, 2017. Failure to file an amended complaint on or before September 22, 2017 will result in a dismissal with prejudice. Plaintiff's IFP petition and request for appointment of counsel are taken under advisement. *Luevano*, 722 F.3d at 1023, n.2. It is so ordered.

 _____
Marvin E. Aspen
United States District Judge

Dated:  August 23, 2017
         Chicago, Illinois